## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BOBBIE L. BROWN,** | : | **Civil No. 4:17-cv-1342** |
| | : | |
| **Petitioner,** | : | **(Judge Brann)** |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **JOHN WETZEL, et al.** | : | |
| | : | |
| **Respondents.** | : | |

## <u>REPORT AND RECOMMENDATION</u>

### I.   <u>Introduction</u>

Pending before the court is a petition for writ of habeas corpus filed by the petitioner, Bobbie L. Brown. (Doc. 1). Brown was convicted by a jury in 2008 of first-degree murder and related offenses, and he is currently serving a sentence of life imprisonment in the Pennsylvania Department of Corrections at the State Correctional Institution at Phoenix. Brown's petition raises two grounds for relief, alleging that his trial counsel was ineffective and that the jury was given erroneous instructions that violated his due process rights.

Our review of the record demonstrates that Brown's claim of ineffective assistance was thoroughly considered and denied by the state courts based on a finding that Brown's counsel was not ineffective, and that Brown suffered no prejudice. Moreover, Brown's jury instruction claim is unexhausted and

procedurally defaulted, as he did not raise it in the state courts, and he has not shown

cause to excuse that procedural default. Accordingly, none of Brown's claims

warrant habeas relief, and we will recommend that his petition be denied.

## II.   <u>Statement of Facts and of the Case</u>

The factual background of the instant case was aptly summarized by the trial

court in its decision denying Brown's petition for post-conviction relief:[1]

> The charges ar[o]se out of a shooting which occurred on October 24, 2007, in the area of 19th and Brookwood Streets near Double D's Bar in the City of Harrisburg. [Brown] shot and killed the decedent, [Victim].
>
> [Victim] and [Brown] were both romantically involved with a Tionna Mangus at various times over the preceding several years. During the periods of time that Ms. Mangus broke up with [Victim], she dated [Brown]. When she resumed her relationship with [Victim], she continued to call [Brown] every few months, and [Brown] returned her calls. [Victim] knew of the phone calls and would become enraged when her phone log reflected that she and [Brown] called each other. On several occasions, [Victim] confronted [Brown] while out at a bar, and made threats. [Brown] did not contact police about the encounter[s].
>
> On June 10, 2007, while at a family gathering [Brown] received several threatening calls from [Victim] on his cell phone. [Brown's] girlfriend, mother and sister answered the phone; [Victim] made threats to them as well. [Brown] requested that his brother intervene to help mediate the situation.

---

[1] The Superior Court, in its decision remanding the petition to the PCRA court, adopted the PCRA court's factual summary. <u>Commonwealth v. Brown</u>, 2013 WL 11251530 (Pa. Super. Ct. 2013).

From June 30, 2007 through October 24, 2007, the day of the shooting, [Brown] had no problems with [Victim]. As of October 24, 2007, [Brown] believed that the problem had settled down.

On the evening of the shooting, [Brown] was driving a black Denali, a large SUV, which belonged to his girlfriend Diedre Poage. [Brown] was aware that his girlfriend kept a gun in the glove compartment of the SUV. He received a phone call from a woman he briefly met, Zina Bass, and made plans to meet her at Double D's Bar. As [Brown] approached the vicinity of the bar to pick up Ms. Bass, he slowed the vehicle, and saw [Victim] walking nearby; [Brown] took the gun out of the glove compartment and put it beside him. Ms. Bass got into the vehicle. [Victim] told his cousin [Michael Cooper], whom he was with, that he was going to "go holler at his boy." As [Brown] began to drive away, [Victim] walked across the street and approached the vehicle. [Victim] said to the [Brown], "say something now bitch" then began punching him. [Brown] grabbed the gun and began shooting. Zina Bass jumped out of the vehicle through the window.

A Paula Williams was coming home from church that evening, and turned onto Brookwood Street, behind the black Denali. She observed the Denali pull to the curb, then immediately pull out again, and stop, blocking the road. She saw a person get out of a white vehicle, and walk across in front of her vehicle to the black SUV. Ms. Williams watched, as she waited to see if she could get around the stopped SUV. The person who had approached the SUV raised his right hand. It appeared that he put his hand through the window; he then took it out of the window. That person then fell to the ground, face forward. As the person was on the ground, Ms. Williams saw a hand reach out of the Denali, pointing downward, then two flashes.

[Brown] then drove to his girlfriend's house. He called several family members; [Brown] and his girlfriend drove to Baltimore. They learned by checking the internet that [Victim] died. Two days later, [Brown] turned himself in to Harrisburg Police.

Wayne Ross, MD, a forensic pathologist, conducted an autopsy on [Victim]. Dr. Ross opined that [Victim] died of multiple gunshot wounds, the first through the front of his body in the right shoulder, and the remaining [five] in his back. He opined that based upon the absence

3

of soot of gunshot residue, the shots were fired from a distance of 2 ½ to 3 feet.

Commonwealth v. Brown, 2013 WL 11251530, at *1-2.

Brown was charged with first-degree murder and carrying a firearm without a license. Although he claimed that he shot the victim in self-defense, Brown was convicted by a jury of these charges, and the trial court sentenced him to a mandatory sentence of life imprisonment. Brown appealed, and his conviction and sentence were affirmed by the Pennsylvania Superior Court on March 29, 2010. The Pennsylvania Supreme Court denied Brown's petition for allowance of appeal on October 13, 2010. Brown then timely filed a petition under Pennsylvania's Post Conviction Relief Act ("PCRA"), alleging that his trial counsel was ineffective in several respects. This petition was denied by the PCRA court, and Brown appealed to the Superior Court.

The Superior Court upheld the PCRA court's findings with respect to three of the five claims raised in Brown's petition. However, the court remanded the remaining two claims to the PCRA court for a hearing to determine counsel's ineffectiveness. Relevant to the instant motion is Brown's claim that his counsel was ineffective for failing to impeach one of the Commonwealth's witnesses, Michael Cooper, with a prior conviction for *crimen falsi*. While the PCRA court found that this evidence was "merely cumulative" given counsel's cross examination of this witness about his prior inconsistent statements, the Superior Court found that

4

counsel's cross examination was not so effective as to render this evidence cumulative. Thus, the petition was remanded for an evidentiary hearing.

At the time of this initial Superior Court ruling it was represented that the *crimen falsi* for Michael Cooper consisted of convictions for retail theft, forgery, tampering with physical records, and passing bad checks, an extensive history of *crimen falsi.* In fact, on remand it was determined that Cooper's criminal history was far less significant, and consisted of a single retail theft conviction.

On remand, the PCRA court held two evidentiary hearings, which consisted of testimony from multiple individuals, including trial counsel. At the second hearing, a stipulation was entered as to the witness's criminal record at the time of trial. Ultimately, noting that trial counsel had a sound overall strategy to impeach the witness about his prior inconsistent statements to law enforcement about the shooting, and further finding that Brown did not suffer prejudice, the PCRA court denied the petition. This denial was affirmed by the Superior Court, which upheld the PCRA court's view that, even if trial counsel's performance could be deemed deficient, Brown suffered no prejudice. Brown's petition for allowance of appeal was denied by the Pennsylvania Supreme Court on July 27, 2017).

Thereafter, Brown, through his PCRA counsel, filed the instant petition for habeas corpus. (Doc. 1). His initial petition raised only one ground for relief— ineffective assistance of counsel for failing to impeach Michael Cooper with a prior

conviction. The respondents responded to the petition, and counsel for Brown filed a reply. (Docs. 4, 6). Subsequently, Brown's counsel withdrew on May 24, 2017 (Doc. 7), and Brown was unrepresented until counsel entered his appearance on July 5, 2018. (Doc. 8). Counsel then filed an amended habeas petition, raising Brown's initial ground for relief along with a new ground for relief—that the jury instructions were erroneous and violated due process of law. (Doc. 15). The respondents have filed a response to the amended petition, and Brown has filed a reply. (Docs. 20, 22). Thus, the petition is ripe for resolution.

## III.   **Discussion**

### A. **State Prisoner Habeas Relief–The Legal Standard.**

#### (1) **Substantive Standards**

In order to obtain federal habeas corpus relief, a state prisoner seeking to invoke the power of this Court to issue a writ of habeas corpus must satisfy the standards prescribed by 28 U.S.C. § 2254, which provides in part as follows:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.
>
> (b) (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
> (A) the applicant has exhausted the remedies available in the courts of the State;

..........

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

28 U.S.C. § 2254(a) and (b).

As this statutory text implies, state prisoners must meet exacting substantive and procedural benchmarks in order to obtain habeas corpus relief. At the outset, a petition must satisfy exacting substantive standards to warrant relief. Federal courts may "entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). By limiting habeas relief to state conduct which violates "the Constitution or laws or treaties of the United States," § 2254 places a high threshold on the courts. Typically, habeas relief will only be granted to state prisoners in those instances where the conduct of state proceedings led to a "fundamental defect which inherently results in a complete miscarriage of justice" or was completely inconsistent with rudimentary demands of fair procedure. See e.g., Reed v. Farley, 512 U.S. 339, 354 (1994). Thus, claimed violations of state law, standing alone, will not entitle a petitioner to § 2254 relief, absent a showing that those violations are so great as to be of a constitutional dimension. See Priester v. Vaughan, 382 F.3d 394, 401–02 (3d Cir. 2004).

### (2) Deference Owed to State Courts

These same principles which inform the standard of review in habeas petitions and limit habeas relief to errors of a constitutional dimension also call upon federal courts to give an appropriate degree of deference to the factual findings and legal rulings made by the state courts in the course of state criminal proceedings. There are two critical components to this deference mandated by 28 U.S.C. § 2254.

First, with respect to legal rulings by state courts, under § 2254(d), habeas relief is not available to a petitioner for any claim that has been adjudicated on its merits in the state courts unless it can be shown that the decision was either: (1) "contrary to" or involved an unreasonable application of clearly established case law; see 28 U.S.C. § 2254(d)(l); or (2) was "based upon an unreasonable determination of the facts," see 28 U.S.C. § 2254(d)(2). Applying this deferential standard of review, federal courts frequently decline invitations by habeas petitioners to substitute their legal judgments for the considered views of the state trial and appellate courts. See Rice v. Collins, 546 U.S. 333, 338–39 (2006); see also Warren v. Kyler, 422 F.3d 132, 139–40 (3d Cir. 2006); Gattis v. Snyder, 278 F.3d 222, 228 (3d Cir. 2002).

In addition, § 2254(e) provides that the determination of a factual issue by a state court is presumed to be correct unless the petitioner can show by clear and convincing evidence that this factual finding was erroneous. See 28 U.S.C. §

8

2254(e)(1). This presumption in favor of the correctness of state court factual findings has been extended to a host of factual findings made in the course of criminal proceedings. See, e.g., Maggio v. Fulford, 462 U.S. 111, 117 (1983) (per curiam); Demosthenes v. Baal, 495 U.S. 731, 734–35 (1990). This principle applies to state court factual findings made both by the trial court and state appellate courts. Rolan v. Vaughn, 445 F.3d 671 (3d Cir.2006). Thus, we may not re-assess credibility determinations made by the state courts, and we must give equal deference to both the explicit and implicit factual findings made by the state courts. Weeks v. Snyder, 219 F.3d 245, 258 (3d Cir. 2000). Accordingly, in a case such as this, where a state court judgment rests upon factual findings, it is well-settled that:

> A state court decision based on a factual determination, ..., will not be overturned on factual grounds unless it was objectively unreasonable in light of the evidence presented in the state proceeding. Miller–El v. Cockrell, 537 U.S. 322, 123 S. Ct. 1029, 154 L.Ed.2d 931 (2003). We must presume that the state court's determination of factual issues was correct, and the petitioner bears the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); Campbell v. Vaughn, 209 F.3d 280, 285 (3d Cir.2000).

Rico v. Leftridge–Byrd, 340 F.3d 178, 181 (3d Cir. 2003). Applying this standard of review, federal courts may only grant habeas relief whenever "[o]ur reading of the PCRA court records convinces us that the Superior Court made an unreasonable finding of fact." Rolan, 445 F.3d at 681.

### (3) Ineffective Assistance of Counsel Claims

These general principles apply with particular force to habeas petitions that are grounded in claims of ineffective assistance of counsel. It is undisputed that the Sixth Amendment to the United States Constitution guarantees the right of every criminal defendant to effective assistance of counsel. Under federal law, a collateral attack of a sentence based upon a claim of ineffective assistance of counsel must meet a two-part test established by the Supreme Court in order to survive. Specifically, to prevail on a claim of ineffective assistance of counsel, a petitioner must establish that: (1) the performance of counsel fell below an objective standard of reasonableness; and (2) that, but for counsel's errors, the result of the underlying proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 687-88, 691-92 (1984). A petitioner must satisfy both of the Strickland prongs in order to maintain a claim of ineffective counsel. George v. Sively, 254 F.3d 438, 443 (3d Cir. 2001).

At the outset, Strickland requires a petitioner to "establish first that counsel's performance was deficient." Jermyn v. Horn, 266 F.3d 257, 282 (3d Cir. 2001). This threshold showing requires a petitioner to demonstrate that counsel made errors "so serious" that counsel was not functioning as guaranteed under the Sixth Amendment. Id. Additionally, the petitioner must demonstrate that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms.

10

Id. However, in making this assessment "[t]here is a 'strong presumption' that counsel's performance was reasonable." Id. (quoting Berryman v. Morton, 100 F.3d 1089, 1094 (3d Cir. 1996)).

But a mere showing of deficiencies by counsel is not sufficient to secure habeas relief. Under the second Strickland prong, a petitioner also "must demonstrate that he was prejudiced by counsel's errors." Id. This prejudice requirement compels the petitioner to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. A "reasonable probability" is defined as "a probability sufficient to undermine confidence in the outcome." Id.

Thus, as set forth in Strickland, a petitioner claiming that his criminal defense counsel was constitutionally ineffective must show that his lawyer's "representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Thomas v. Varner, 428 F.3d 491, 499 (3d Cir. 2005) (quoting Strickland, 466 U.S. at 689). The petitioner must then prove prejudice arising from counsel's failings. "Furthermore, in considering whether a petitioner suffered prejudice, '[t]he effect of counsel's inadequate performance must be

11

evaluated in light of the totality of the evidence at trial: a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support.'" Rolan, 445 F.3d at 682 (quoting Strickland, 466 U.S. at 696) (internal quotations omitted).

Although sometimes couched in different language, the standard for evaluating claims of ineffectiveness under Pennsylvania law is substantively consistent with the standard set forth in Strickland. See Commonwealth v. Pierce, 527 A.2d 973, 976–77 (Pa.1987); see also Werts v. Vaugh, 228 F.3d 178, 203 (3d Cir.2000) ("[A] state court decision that applied the Pennsylvania [ineffective assistance of counsel] test did not apply a rule of law that contradicted Strickland and thus was not 'contrary to' established Supreme Court precedent"). Accordingly, a federal court reviewing a claim of ineffectiveness of counsel brought in a petition under 28 U.S.C. § 2254 may grant federal habeas relief if the petitioner can show that the state court's adjudication of his claim was an "unreasonable application" of Strickland. Billinger v. Cameron, 2010 U.S. Dist. LEXIS 63759, at *11, 2010 WL 2632286 (W.D. Pa. May 13, 2010). In order to prevail against this standard, a petitioner must show that the state court's decision "cannot reasonably be justified under existing Supreme Court precedent." Hackett v. Price, 381 F.3d 281, 287 (3d Cir. 2004); see also Waddington v. Sarausad, 555 U.S. 179, 190 (2009) (where the state court's application of federal law is challenged, "the state court's decision must

be shown to be not only erroneous, but objectively unreasonable.") (internal citations and quotations omitted).

This additional hurdle is added to the petitioner's substantive burden under Strickland. As the Supreme Court has observed a "doubly deferential judicial review that applies to a Strickland claim evaluated under the § 2254(d)(1) standard." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009); see also Yarborough v. Gentry, 540 U.S. 1, 6 (2003) (noting that the review of ineffectiveness claims is "doubly deferential when it is conducted through the lens of federal habeas"). This doubly deferential standard of review applies with particular force to strategic judgment like those thrust upon counsel in the instant case. In this regard, the Court has held that:

> "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Id., at 688, 104 S. Ct. 2052. "Judicial scrutiny of counsel's performance must be highly deferential," and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id., at 689, 104 S. Ct. 2052. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Id., at 690, 104 S. Ct. 2052.

Knowles v. Mirzayance, 556 U.S. 111, 124, 129 S. Ct. 1411, 1420, 173 L. Ed. 2d 251 (2009). The deference which is owed to these strategic choices by trial counsel is great.

> Therefore, in evaluating the first prong of the Strickland test, courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial

strategy.' " Id. The presumption can be rebutted by showing "that the conduct was not, in fact, part of a strategy or by showing that the strategy employed was unsound." Thomas v. Varner, 428 F.3d 491, 499-500 (3d Cir.2005) (footnote omitted).

Lewis v. Horn, 581 F.3d 92, 113 (3d Cir. 2009).

### (4) Procedural Benchmarks – Exhaustion and Procedural Default

### a. Exhaustion of State Remedies

State prisoners seeking relief under section 2254 must also satisfy specific procedural standards. Among these procedural prerequisites is a requirement that the petitioner "has exhausted the remedies available in the courts of the State" before seeking relief in federal court. 28 U.S.C. § 2254(b). In instances where a state prisoner has failed to exhaust the legal remedies available to him in the state courts, federal courts typically will refuse to entertain a petition for habeas corpus. Whitney v. Horn, 280 F.3d 240, 250 (3d Cir. 2002).

This statutory exhaustion requirement is rooted in principles of comity and reflects the fundamental idea that the state should be given the initial opportunity to pass upon and correct alleged violations of the petitioner's constitutional rights. O'Sullivan v. Boerckel, 526 U.S. 838, 844 (1999). The Supreme Court has explained that "a rigorously enforced total exhaustion rule" is necessary in our dual system of government to prevent a federal district court from upsetting a state court decision without first providing the state courts the opportunity to correct a

14

constitutional violation.  Rose v. Lundy, 455 U.S. 509, 518 (1982).  Requiring exhaustion of claims in state court also promotes the important goal of ensuring that a complete factual record is created to aid a federal court in its review of § 2254 petitions.  Walker v. Vaughn, 53 F.3d 609, 614 (3d Cir. 1995).  A petitioner seeking to invoke the writ of habeas corpus, therefore, bears the burden of showing that all of the claims alleged have been "fairly presented" to the state courts, and the claims brought in federal court must be the "substantial equivalent" of those presented to the state courts.  Evans v. Court of Common Pleas, 959 F.2d 1227, 1231 (3d Cir. 1992); Santana v. Fenton, 685 F.2d 71, 73-74 (3d Cir. 1982).  A petitioner cannot avoid this responsibility merely by suggesting that he is unlikely to succeed in obtaining state relief, since it is well-settled that a claim of "likely futility on the merits does not excuse failure to exhaust a claim in state court."  Parker v. Kelchner, 429 F.3d 58, 63 (3d Cir. 2005).

Although this exhaustion requirement compels petitioners to have previously given the state courts a fair "opportunity to apply controlling legal principles to the facts bearing upon [the petitioner's] constitutional claim," Picard v. Connor, 404 U.S. 270, 276 (1971), this requirement is to be applied in a commonsense fashion. Thus, the exhaustion requirement is met when a petitioner submits the gist of his federal complaint to the state courts for consideration, without the necessity that the petitioner engage in some "talismanic" recitation of specific constitutional clams.

15

Evans, 959 F.2d at 1230-33.  Similarly, a petitioner meets his obligation by fairly presenting a claim to state courts, even if the state courts decline to address that claim.  Dye v. Hofbauer, 546 U.S. 1 (2005) (per curiam); Johnson v. Pinchak, 392 F.3d 551, 556 (3d Cir. 2004).

### b.  **Procedural Default**

A necessary corollary of this exhaustion requirement is the procedural default doctrine, which applies in habeas corpus cases.  Certain habeas claims, while not exhausted in state court, may also be incapable of exhaustion in the state legal system by the time a petitioner files a federal habeas petition because state procedural rules bar further review of the claim.  In such instances:

> In order for a claim to be exhausted, it must be "fairly presented" to the state courts "by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 844-45, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999). If a claim has not been fairly presented to the state courts and it is still possible for the claim to be raised in the state courts, the claim is unexhausted . . . .

> If a claim has not been fairly presented to the state courts but state law clearly forecloses review, exhaustion is excused, but the doctrine of procedural default may come into play.  A procedural default occurs when a prisoner's federal claim is barred from consideration in the state courts by an "independent and adequate" state procedural rule.  Federal courts may not consider the merits of a procedurally defaulted claim unless the default and actual "prejudice" as a result of the alleged violation of the federal law or unless the applicant demonstrates that failure to consider the claim will result in a fundamental "miscarriage

16

of justice."  Coleman v. Thompson, 501 U.S. 722, 750, 111 S. Ct. 2546, 115 L.Ed.2d 640 (1991).

Carpenter v. Vaughn, 296 F.3d 138, 146 (3d Cir. 2002).

"[A] federal court will ordinarily not entertain a procedurally defaulted constitutional claim in a petition for habeas corpus '[o]ut of respect for finality, comity, and the orderly administration of justice.'  This is a reflection of the rule that 'federal courts will not disturb state court judgments based on adequate and independent state law procedural ground.'"  Hubbard v. Pinchak, 378 F.3d 333, 338 (3d Cir. 2004) (citations omitted).  Given these concerns of comity, the exceptions to the procedural default rule, while well-recognized, are narrowly defined.  Thus, for purposes of excusing a procedural default of a state prisoner seeking federal habeas relief, "[t]he Supreme Court has delineated what constitutes 'cause' for the procedural default:  the petitioner must 'show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'" Werts v. Vaughn, 228 F.3d 178, 192-93 (3d Cir. 2000) (citations omitted).  Similarly, when examining the second component of this "cause and prejudice" exception to the procedural default rule, it is clear that:

> With regard to the prejudice requirement, the habeas petitioner must prove "'not merely that the errors at … trial created the possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'"  This standard essentially requires the petitioner to show he was denied "fundamental fairness" at trial.  In the context of an

17

ineffective assistance claim, we have stated that prejudice occurs where "there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different."
Id. at 193 (citations omitted).

Likewise, the "miscarriage of justice" exception to this procedural bar rule is also narrowly tailored, and requires a credible assertion of actual innocence to justify a petitioner's failure to comply with state procedural rules. Hubbard, 378 F.3d at 338.

Procedural bar claims typically arise in one of two factual contexts. First, in many instances, the procedural bar doctrine is asserted because an express state court ruling in prior litigation denying consideration of a habeas petitioner's state claims on some state procedural ground. In such a situation, courts have held that:

> A habeas claim has been procedurally defaulted when "a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." Coleman v. Thompson, 501 U.S. 722, 730, 111 S. Ct. 2546, 115 L.Ed.2d 640 (1991). For a federal habeas claim to be barred by procedural default, however, the state rule must have been announced prior to its application in the petitioner's case and must have been "firmly established and regularly followed." Ford v. Georgia, 498 U.S. 411, 423-24, 111 S. Ct. 850, 112 L.Ed.2d 935 (1991). Whether the rule was firmly established and regularly followed is determined as of the date the default occurred, not the date the state court relied on it, Doctor v. Walters, 96 F.3d 675, 684 (3d Cir. 1996), because a petitioner is entitled to notice of how to present a claim in state court, Ford, 498 U.S. at 423-424, 111 S. Ct. 850, 112 L.Ed.2d 935.

Taylor v. Horn, 504 F.3d 416, 427-28 (3d Cir. 2007).

In other instances, the procedural default arises, not because of an express state court ruling, but as a consequence of a tactical choice by a habeas petitioner, who elects to waive or forego a claim in the course of his state proceedings, and thus fails to fully exhaust the claim within the time limits prescribed by state statute or procedural rules. In such instances the petitioner's tactical choices in state court litigation also yield procedural defaults and waivers of claims federally. See, e.g., Johnson v. Pinchak, 392 F.3d 551 (3d Cir. 2004) (procedural default where petitioner failed to timely pursue state claim); Hull v. Freeman, 991 F.2d 86 (3d Cir. 1993) (same). Accordingly, a petitioner's strategic choices in state court waiving or abandoning state claims may act as a procedural bar to federal consideration of his claims, unless the petitioner can show either "cause and prejudice" or demonstrate a "fundamental miscarriage of justice."

**B. Brown's Claims are Either Unexhausted and Procedurally Defaulted, or Without Merit.**

As we have explained, Brown raises two grounds for relief in his amended petition. First, he argues that his trial counsel was ineffective for failing to impeach Michael Cooper with his prior conviction for *crimen falsi*. Additionally, Brown contends that the jury was given erroneous instructions with respect to the standard for "reasonable doubt" and the burden of proof for self-defense. However, after a review of the record, we conclude that Brown's ineffective assistance claim is

without merit, and further, that his claim regarding the jury instructions is procedurally defaulted. Thus, we will recommend that this petition be denied.

### (1) Brown's Ineffective Assistance of Counsel Claim is Without Merit.

Brown first contends that his trial counsel was ineffective because counsel failed to impeach one of the Commonwealth's witnesses with a prior conviction. This witness, Michael Cooper, was with the victim before the shooting occurred, and had allegedly given a statement to the police about what had occurred the night of the shooting, which was inconsistent with his testimony at trial on direct examination. The PCRA court, after two hearings on the matter, ultimately found that counsel was not ineffective, and the Superior Court affirmed this finding.

At the first hearing, trial counsel testified regarding the cross examination of Cooper, who was the victim's cousin. Counsel stated that he did not recall having a record of Cooper's criminal history but testified: "I can't wrap my head around the fact that if I had had a crimen falsi conviction for a witness that I wouldn't have used it." (Doc. 6-2, at 18). However, counsel also testified that having, and moreover, using the prior conviction to impeach the witness, "[did not] necessarily mean it would have had a material impact on the outcome of the trial." (Id., at 20). Additionally, at the second hearing, a stipulation was entered that the *crimen falsi* for Michael Cooper consisted of one conviction for retail theft, not convictions for

20

forgery, tampering with physical records, and passing bad checks, as were relied on in Brown's appeal. (Doc. 6-3, at 5-6).

Ultimately, after both hearings, the PCRA court denied Brown's petition. (Doc. 6-4 at 2). The court noted initially that Brown's appeal relied on the three *crimen falsi* that he believed were included in Cooper's criminal history, and that Cooper actually had only one prior conviction for retail theft, a petty misdemeanor. (Id., at 12). Moreover, the court concluded that trial counsel's overall strategy regarding the cross examination of Cooper was reasonable. Counsel's focus was to damage the witness's credibility by confronting him with a prior statement he had made to police, which contradicted his testimony on direct examination. Counsel indicated at the hearing that he believed this contradiction was important to point out on cross examination, as he had corroborating testimony from a detective. Moreover, the court found that, even if counsel had the prior conviction and had used it to impeach Cooper, "that may have resulted in Cooper being viewed as a liar again on cross examination, just after [counsel] had just gotten him to admit that he lied on direct examination." (Id., at 14). Additionally, although the PCRA court found that Brown's counsel was not ineffective, the court also concluded that, even if counsel had been ineffective, Brown suffered no prejudice. Not only did counsel get Cooper to admit that he lied on the stand, but there was damaging video footage of the shooting and a third-party eye witness, Paula Williams, whose testimony "cast

21

serious doubt on whether the impeachment would have had any material impact."

(Id.)

The Superior Court agreed in its decision affirming the denial of Brown's PCRA petition, noting that any impeachment of Cooper using his prior conviction was not likely to have a material impact on the ultimate outcome of the trial. The court noted that Brown's defense to the murder charge was self-defense. However, testimony from Paula Williams indicated that the victim "was prone when Brown fired at least two shots," and that the medical examiner testified that the victim suffered five gunshots to his back. (Doc. 4-3, at 96). Recognizing that it was the Commonwealth's burden to disprove the theory of self-defense, the court found that, given this damaging evidence against Brown, "it is highly unlikely that [the jury] would have believed that Brown did not continue the use of deadly force beyond what was necessary for self-defense. Nor is it likely that they would have found that Brown availed himself of the possibility of retreating from the altercation started by [the victim]." (Id.) Ultimately, the court agreed with the PCRA court that Brown was not prejudiced and affirmed the denial of his petition.

In evaluating this ineffectiveness claim we are mindful that we do not write upon a blank slate. Instead, a "doubly deferential judicial review that applies to a Strickland claim evaluated under the § 2254(d)(1) standard." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009). "Furthermore, in considering whether a

22

petitioner suffered prejudice, '[t]he effect of counsel's inadequate performance must be evaluated in light of the totality of the evidence at trial: a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support.'" Rolan, 445 F.3d at 682 (quoting Strickland, 466 U.S. at 696) (internal quotations omitted).

Judged by these standards, we cannot conclude that the state court's decision involved an unreasonable application of Strickland or was based on an unreasonable determination of the facts. To the contrary, both the PCRA court and the Superior Court found that, even if counsel could be deemed ineffective for failing to impeach the witness with his prior conviction, which was a conviction for a petty misdemeanor, Brown was not prejudiced because the other evidence against him was highly probative and thoroughly contradicted his claim of self-defense. Indeed, entirely aside from Cooper's testimony, there was substantial evidence which undermined Brown's claim of self-defense. Simply put, the fact that there was video footage of the shooting; an eye witness testified that the victim was lying prone on the ground when Brown shot him; and the autopsy results which revealed that the victim was shot five times in the back, all make it extremely unlikely that the outcome at trial would have been different had the jury known about Michael Cooper's prior conviction for retail theft. Thus, given the weight of this evidence rebutting Brown's self-defense claim and the fact that we must afford deference to

23

the state court's findings, we cannot conclude that Brown was prejudiced by any alleged ineffectiveness of counsel. Accordingly, this ineffective assistance claim has no merit and is not a basis on which this court should grant habeas relief.

**(2) Brown's Jury Instruction Claim is Unexhausted and Procedurally Defaulted.**

Brown also contends that habeas relief is warranted because the jury received erroneous instructions with respect to the standard for "reasonable doubt" and the burden of proof for the defense of self-defense. Brown acknowledges that his claim is unexhausted and procedurally defaulted but contends that he has "cause" to excuse the procedural default because both his trial counsel and his PCRA counsel failed to raise the issue. However, a review of the merits of this claim demonstrates that the claim has no merit, and thus, counsel could not have been ineffective for failing to raise it. Accordingly, this claim is procedurally defaulted and does not afford Brown relief.

Section 2254 states that "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." 28 U.S.C. § 2254(i). Further, the Supreme Court has stated that "[t]here is no constitutional right to an attorney in state post-conviction proceedings," and consequently "a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings." Coleman v. Thompson, 501 U.S. 722, 752 (1991) (citing Pennsylvania v. Finley, 481 U.S. 551

(1987) and <u>Wainwright v. Torna</u>, 455 U.S. 586 (1982)); <u>see also</u> <u>Holman v. Gillis</u>, 58 F. Supp. 2d 587, 597 (E.D. Pa. 1999) (stating that "a claim of ineffective assistance of PCRA counsel is not cognizable in a federal habeas corpus petition because the right to effective assistance of PCRA counsel exists pursuant to state law, and is not mandated by the Constitution or laws or treaties of the United States").

Brown does not bring a claim directly against his PCRA counsel, but rather argues that his jury instruction claim fits within the narrow exception announced by the Supreme Court in <u>Martinez v. Ryan</u>, 566 U.S. 1 (2012), which held:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

<u>Martinez</u>, 566 U.S. at 17.

The <u>Martinez</u> exception to the procedural default doctrine is narrow in that it provides a petitioner with a method to establish "cause" for procedural default on an ineffectiveness claim at trial by asserting that post-conviction counsel was also ineffective in failing to preserve the claim for review.  <u>Id.</u> It does not, however, allow a petitioner to rely on the ineffectiveness of post-conviction counsel as a ground for relief, as that is precluded by § 2254(i). <u>Id.</u> Therefore, to the extent that the petitioner

25

seeks substantive relief on the ground that his PCRA counsel was ineffective, such relief should be denied.

Further, to the extent Brown seeks to use PCRA counsel's alleged ineffectiveness as "cause" to excuse procedural default of his unexhausted ineffective assistance claims, he has not met his burden of proving cause and prejudice. Under Martinez, the failure to raise a claim in a PCRA petition is excused only if counsel rendered ineffective assistance in developing, or failing to develop, the claim. Martinez, 566 U.S. at 21-22. Additionally, the claim of ineffective assistance of trial counsel that was not raised must be a substantial one—that is, it must have some merit. Id. at 14. This is a very high standard, as counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Burt v. Titlow, 134 S. Ct. 10, 17 (2013) (quoting Strickland v. Washington, 466 U.S. 668, 690 (1984)).

In the instant case, in our view, Brown's claim of ineffective assistance—that counsel failed to raise the issue of erroneous jury instructions—does not meet the Martinez standard because it does not have arguable merit.[2]

---

[2] We note that Brown's counsel has obtained affidavits from Brown's trial counsel and PCRA counsel. (Docs. 17-1, 17-2). While these affidavits apparently concede that counsel failed to raise this claim on both direct appeal and in a PCRA petition, we conclude that this underlying claim has no merit, and thus, as explained in more detail below, the failure to raise this claim cannot excuse Brown's procedural default.

Brown contends that the trial court gave the jury an erroneous reasonable doubt instruction because the language of the instruction lessened the Commonwealth's burden of proof. The jury instruction given was, in part, as follows:

> A reasonable doubt is such doubt that would cause a reasonable and careful person to restrain from acting in matters of importance in your own affairs. . . . I want to tell you what reasonable doubt is not. I give you the definition twice, and then I'm going to tell you what it is not. It is not beyond all doubt or a shadow of a doubt or any doubt. There would never be a conviction in a criminal case because we can always have a doubt or some doubt about what we do in every circumstance and situation. So it's not beyond all doubt or a shadow of a doubt or any doubt. It has to be an actual and real doubt that you have from the evidence or lack of evidence that was presented to you.
>
> It is more, it is more though than a mere probability or a mere suspicion about what occurred. If you go back there and say, I've examined the evidence and I believe this is probably what occurred or this is what is likely to have occurred, it's got to be more weighty and more persuasive than that. Proof beyond a reasonable doubt is that you have an actual and real doubt about what was presented to you in this matter. And if you have that reasonably doubt, then your duty is to find the Defendant not guilty because he is cloaked in that presumption of innocence.

(Doc. 4-2, at 237-38).

Brown contends that the use of the phrase "restrain from acting" lessened the Commonwealth's burden of proof, and he relies on Thomas v. Horn, 570 F.3d 105 (3d Cir. 2009), in which the Third Circuit criticized the use of this phrase. However, in Thomas, although the Court of Appeals criticized this language, it held that the use of this phrase "does not, by itself, so raise the threshold as to 'suggest a higher

27

degree of doubt than is required for acquittal under the reasonable doubt standard.'" Thomas, 570 F.3d at 119 (quoting Cage v. Louisiana, 498 U.S. 39, 41 (1990)). Ultimately, the Court found that, while the use of "restrain from acting" is not ideal, "it is not enough to render its entire instruction unconstitutional." Id., at 119-20. See also Schultz v. Wenerowicz, 2015 WL 10767484, at *15 (E.D. Pa. Oct. 5, 2015) (citing Thomas and holding that the use of the word "refrain from acting" did not render the reasonable doubt instruction unconstitutional).

On this score, Brown's amended petition concedes that this phrase, by itself, does not render the instruction erroneous. However, he contends that the use of this phrase, along with the fact that the trial court substituted the word "it" in place of "reasonable doubt" in the instruction, rendered the entire instruction unconstitutional, as the instruction allegedly permitted the jury to convict Brown based on a "mere suspicion" or "probability."

On this score, we conclude that the entire reasonable doubt instruction, "taken as a whole, fairly and accurately conveys the essential meaning." Commonwealth v. Uderra, 862 A.2d 74, 92 (Pa. 2004) (citing United States v. Park, 421 U.S. 658, 674 (1975)). In this case, the trial judge clearly articulated the standard for reasonable doubt, defining what it is and what it is not. Particularly, with respect to the petitioner's issue with the "probability" language, the trial court explicitly stated that reasonable doubt is "more weighty" than a probability: "If you go back there and

28

say, I've examined the evidence and I believe this is probably what occurred or this is what is likely to have occurred, *it's got to be more weighty and more persuasive than that.*" (Doc. 4-2, at 237-38) (emphasis added). Indeed, our review of the entire instruction demonstrates that the trial court clearly conveyed the standard for reasonable doubt, and thus, counsel cannot be deemed ineffective for failing to object to the instruction.

Finally, Brown contends that the court's instruction on the defense of self-defense improperly shifted the Commonwealth's burden of proof to him, rendering the instruction unconstitutional. On this score, we note that once the defense of self-defense was properly raised by Brown, it was the Commonwealth's burden to disprove that Brown acted in self-defense. See Commonwealth v. Smith, 97 A.3d 782, 787 (Pa. Super. Ct. 2014) ("If the defendant properly raises self-defense . . . the burden is on the Commonwealth to prove beyond a reasonable doubt that the defendant's act was not justifiable self-defense") (internal quotations and citation omitted). To sustain this burden, the Commonwealth need only establish one of the following: "1) the accused did not reasonably believe that he was in danger of death or serious bodily injury; or 2) the accused provoked or continued the use of force; or 3) the accused had a duty to retreat and the retreat was possible with complete safety." Id. (quoting Commonwealth v. Hammond, 953 A.2d 544, 559 (Pa. Super. Ct. 2008)).

29

Here, Brown argues that the jury instructions improperly shifted the burden to him to prove that he acted in self-defense. However, when the trial judge instructed the jury on the defense of self-defense, judge first stated: "It is not for the defense to prove that they acted in self-defense. The Commonwealth has the burden of proving beyond a reasonable doubt that the Defendant did not act in self-defense." (Doc. 4-2, at 240). The judge then instructed the jury on the use of deadly force in self-defense and explained that there were three ways for the Commonwealth to disprove the theory of self-defense—to show that Brown did not reasonably believe he was in danger of death or serious bodily injury, that he either provoked or continued the use of force beyond what was necessary, or that he could have retreated safely and failed to do so. (Id., at 241, 244-46). The judge then stated the following: "If the Commonwealth establishes any one of those or proves those to the contrary, then he has no claim of self-defense and you would consider the crimes that are going to be on your verdict slip." (Id., at 247). Following the initial charge, the jury raised several questions about the elements of the offenses charged, including a question regarding self-defense. (Id., at 278). The trial judge then reviewed the instruction on self-defense, again stating: "In order to find the defense of self-defense, the Defendant doesn't have to prove that. The Commonwealth has the burden of proving beyond a reasonable doubt that the Defendant is not -- did not act in self-defense." (Id.)

30

Given the court's repeated admonitions that the burden for poof always rested with the Commonwealth, we cannot conclude that the self-defense instruction given by the trial judge improperly shifted the burden to the petitioner to prove he acted in self-defense. To the contrary, the judge explicitly stated, more than once, that it was the Commonwealth's burden to prove that the petitioner did not act in self-defense, and that the Commonwealth must prove that beyond a reasonable doubt. Thus, counsel cannot be deemed ineffective for failing to object or raise this issue with the court, and further, in his PCRA petition. See United States v. Mannino, 212 F.3d 835, 840 (3d Cir. 2000) (finding that counsel cannot be held to be ineffective under Strickland for the failure to raise an issue on appeal if the claim is not meritorious); Commonwealth v. Chmiel, 30 A.3d 1111, 1148 (Pa. 2011) (finding that the appellant could not prevail on his claims of ineffective assistance of appellate counsel where his underlying ineffective assistance of trial counsel claims lacked merit). Accordingly, Brown's claim that his due process rights were violated by erroneous jury instructions is without merit, and thus trial counsel and PCRA counsel's failure to raise the claim cannot constitute "cause" to excuse the claim from being procedurally defaulted.

In sum, the grounds on which Brown believes he is entitled to habeas relief are meritless. The state court properly determined that trial counsel was not ineffective with respect to the cross examination of Michael Cooper. Further,

Brown's jury instruction claim is without merit, and thus his counsel's failure to raise the claim does not excuse his procedural default. Accordingly, we recommend that Brown's petition be denied.

## IV.    <u>Recommendation</u>

Accordingly, for the foregoing reasons, IT IS HEREBY RECOMMENDED that the petition for a writ of habeas corpus in this case be DENIED, and that a certificate of appealability should not issue.

The petitioner is further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 15th day of May, 2019.

/s/ Martin C. Carlson
Martin C. Carlson
United States Magistrate Judge